HARDY, Judge.
This is a suit for commission allegedly due plaintiff for services rendered as a broker in procuring a loan of $20,000 for the benefit of defendant. The matter has once before been appealed to this court, Craton v. Miller, La.App., 47 So.2d 342. In consequence of this appeal judgment of the District Court in favor of plaintiff, was reversed and there was judgment dismissing plaintiff’s suit against Miller and further dismissing his suit against Inabnett on an exception to the jurisdiction ratione personae. This suit was filed by plaintiff against the defendant, Inabnett, in Lincoln Parish, and after trial, again judgment was rendered in favor of plaintiff, from which defendant prosecutes this appeal.
Plaintiff claims the sum of-$400 alleged to represent a commission of 2% on the, loan of $20,000, which he procured at the request and in the interest of defendant from Jefferson Standard Life Insurance Company. Plaintiff’s principal demand was predicated upon the contention that defendant agreed to the payment of the commission prior to making application for the loan. Alternatively plaintiff alleges his right to recovery on the basis of quantum meruit.
*130 We briefly recapitulate the facts which were generally established without contradiction. Defendant, who was the owner of a plot of land in the Town of Ruston, Lincoln Parish, Louisiana, was desirous of erecting a filling station thereon and to procure a loan of some $20,000 for such purpose. Plaintiff, a licensed real estate and loan broker of Minden, Webster Parish, Louisiana, was approached by one J. R'. Miller, who was the' father-in-law of defendant, with reference to procuring such a loan. After some discussion, or discussions, with defendant and Miller, plaintiff undertook negotiations with the Jefferson Standard Life Insurance Company, which resulted in a loan commitment, by said company. In connection with the negotiations leading up to the approval of and commitment for the loan it is established that plaintiff made several trips to Shreveport and at least one trip to Ruston; that he devoted some effort to procuring an interim construction loan from a Minden bank, and, generally, that he performed a considerable number of valuable and essential services in connection with the matter and in behalf of the interest of defendant.
The most seriously controverted and most important point in the case bears upon the existence, vel non, of an understanding as between plaintiff and defendant with respect to the payment of a commission. Plaintiff positively asserts that he advised defendant in the initial stages of the transaction that he would be expected to pay plaintiff a commission of 2% as a brokerage fee on the $20,000 principal amount of the loan. This assertion is as positively and as strenuously denied by defendant. Under these circumstances it is urged that plaintiff has failed to prove his claim by the requisite preponderance of testimony and, accordingly, that recovery should be denied. If we considered only the testimony of the principals themselves this view would be undeniably correct. But when we look at other circumstances and facts surrounding the course of the negotiations we find additional light on this controverted issue.
At the time plaintiff was an agent for the lender, Jefferson Standard Life Insurance Company and in such capacity had closed a number of loans. He did not receive any commissions on these loans and his testimony is well supported on the point that the company did not pay a brokerage commission. During the transactions attendant upon closing the loan one M. O. Carter, manager of the Jefferson Standard Life Insurance Company at Shreveport, Louisiana, wrote the law firm of Barham & Elder, who were the attorneys charged with the process of closing the loan, requesting a check- in the sum of $400 covering the 2% commission when the loan was closed. The attorneys promptly advised Mr. Carter that it would be necessary to obtain the written authorization of the borrower, Inabnett, whereupon Carter wrote Inabnett requesting his authorization to Barham & Elder for the making of this payment. In this letter appears the following specific statement:
“Mr. Banks Craton took the application for this loan and he explained to you that the commission would be 2 per cent, which will be $400.”
Defendant admitted that he was acquainted with the above letters and their contents, despite which he took no action in the effort to clear up the apparent misunderstanding. Rather, defendant continued to rely upon his denial of payment of any commission out of the proceeds of the loan and his assertion that he was informed by plaintiff that he would be taken care of by the latter. It seems unreasonable to us to conclude that plaintiff made any such statement. _ He was well acquainted with the procedure and custom of the lending company in connection with loans and knew that it would not pay a brokerage fee. It would indeed be a strain on the imagination to consider that under these facts and with the benefit of this knowledge he gave any such assurance to defendant as the latter contends.
On the whole we are convinced that under all the facts as established plaintiff has successfully maintained his claim. We are also keenly cognizant of the accepted rule that the judgment of the lower court will not be reversed on a question of fact in the absence of manifest error. Here *131 we are confronted not with one but with two judgments of lower courts, both of which on separate occasions have held in favor of plaintiff. Under such circumstances we would be even more loath than usual to refuse to accept the correctness of the judgment.
In addition to the effect of our conclusion as above stated, we further think the' principle of the right of recovery of plaintiff in this cause on the ground of quantum meruit is clearly established. On the basis of the acts and services performed by plaintiff which have been above briefly outlined in this opinion, there is no question as to the value of the services rendered which far exceeded those which might be ordinarily understood or comprehended by an obligation of this nature. It is clear that the services of plaintiff were requested by and in behalf of the interest of defendant, which presupposed an obligation on the part of said defendant to pay for such services, Camfrancq v. Pilie, 1 La.Ann. 197.
It is also clear that the services rendered by the plaintiff inured to the benefit of defendant under circumstances which implied an obligation to pay, Granger v. Fontenot, La.App., 3 So.2d 215.
Finally, as observed by Judge Taliaferro in the opinion of this court in this case on first hearing, cited supra [47 So.2d 343]:
“It is of almost common knowledge that with respect to * * * confection of loans through the medium of brokers, the * * * borrower carries the burden of compensating for the services employed in effecting the * * mortgage”.
We think the record is convincing on the point that general custom justifies plaintiff’s claim. It is true that one of defendant’s witnesses testified that on occasions he had promoted or procured loans without payment of commission by the borrower or lender. But it was also shown in this connection that he anticipated, expected and relied upon material benefits which would accrue in other ways, that is, by coverage of insurance on the property in question. We know of no law nor custom which would support a finding that those engaged in the occupation of broker would perform services of the nature and extent here evidenced without expectation Of and right to adequate compensation.
For the reasons assigned the judgment from which appealed is affirmed at appellant’s cost.
McINNIS, J., recused.